# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-1405

_____

James Hunter; Sheri Hunter; Bradley Hutchison; Katherine Hutchison; Susan
Kelley; William McConnell; Cindy O'Hearn; Michael O'Hearn; Barbara Oliver;
James Rine; Mary Rine; Stephanie Sholes

*Plaintiffs - Appellants*

v.

Page County, Iowa; Board of Supervisors of Page County, Iowa; Alan Armstrong;
Jacob Holmes; James King; Chuck Morris; Carl Sonksen

*Defendants - Appellees*

Shenandoah Hills Wind Project, LLC

*Intervenor - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: October 19, 2023
Filed: May 17, 2024

_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.
_____

SMITH, Chief Judge.

The Board of Supervisors of Page County, Iowa (Board) issued a commercial wind energy permit to Shenandoah Hills Wind Project, LLC (SHW) to erect wind turbines in Page County, Iowa (County). Plaintiffs, who own properties or reside near proposed turbine sites, sued the County, the Board, and County officials (collectively, "defendants") in Iowa state court. Plaintiffs claimed that (1) the permit's issuance violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) it violated the Iowa Constitution, Iowa Code, and County ordinances; and (3) County officials, in violation of the Iowa Open Meetings Act, held nonpublic meetings on SHW's application. Defendants removed the case to federal court based on the federal due process claim.

The district court exercised federal question jurisdiction over the federal due process claim and supplemental jurisdiction over the state claims. It dismissed the federal due process claim for lack of prudential standing and as implausibly pleaded under Federal Rule of Civil Procedure 12(b)(6). It further dismissed the state claims as time-barred under Iowa law and implausibly pleaded under Rule 12(b)(6). A few days later, the County revoked the permit. Even though the permit has been revoked, plaintiffs have appealed the district court's order.

Although the parties have not raised jurisdiction as an issue in this appeal, we have an independent obligation to determine whether a dispute is a constitutional case or controversy that we may decide. U.S. Const. art. III, § 2, cl. 1. For the reasons

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

stated herein, we hold that the County's revocation of SHW's permit mooted plaintiffs' claims, except their claims under the Iowa Open Meetings Act. The district court permissibly exercised supplemental jurisdiction over these remaining claims and properly dismissed them. We affirm in part, vacate in part, and remand to the district court for further proceedings consistent with this opinion.

## I. *Background*

Since 1983, the State of Iowa has promoted the development of alternative energy resources, including wind, solar, and hydroelectric energy. Iowa Code §§ 476.41–.42. As of 2022, Iowa exceeded every other state in the percentage of wind energy—62 percent—used to meet residents' electricity demands. U.S. Energy Info. Admin., *Iowa: State Profile and Energy Estimates*, U.S. Energy Atlas, https://www.eia.gov/state/?sid=IA (accessed Mar. 28, 2024). In Iowa, county governments play an integral role in assisting the state government's efforts to develop wind energy. *See, e.g.*, Iowa Code § 476.48 ("Small wind innovation zone program").

In accordance with these statewide efforts, the Board enacted the Wind Energy Conversion Systems on Property Located in the Unincorporated Areas of Page County Ordinance (Wind Ordinance) in 2019. The Wind Ordinance establishes a framework for siting, building, and operating commercial wind turbines in the County. According to plaintiffs, the Board enacted the Wind Ordinance at the behest of representatives of Invenergy Renewables Holdings LLC (Invenergy)—a privately owned, international developer of alternative energy resources. SHW, the intervenor in this case, is Invenergy's subsidiary. SHW was created to develop the Shenandoah Hills Wind Project in Page and Fremont Counties, Iowa.[3]

---

[3]Fremont County's portion of the project is being litigated entirely in Iowa state court. The trial court dismissed the case. That dismissal is on appeal. *See Jennings v. Fremont Cnty.*, No. EQCV025651 (Iowa Dist. Ct. Fremont Cnty. 2023), No. 23-1101 (Iowa Ct. App. 2024). SHW originally aimed to begin operations by December 1, 2023. That date was moved to December 1, 2024. Fed. Energy Reg. Comm'n Rep. ¶ 61,029, 2023 WL 398007 (Jan. 25, 2023).

Pursuant to the Wind Ordinance, Invenergy and SHW applied for a Commercial Wind Energy Conversion Systems (C-WECS) permit in March 2022. Obtaining a C-WECS permit was merely the first of several steps that Invenergy and SHW would need to complete before proceeding with their proposed project. They would also need further regulatory approvals, including building or construction permits, a road-use agreement, and a decommissioning plan. The County's zoning administrator thoroughly reviewed Invenergy and SHW's application, determined that it complied with the Wind Ordinance, and forwarded it to the Board. The Board conducted its own review, consulted outside counsel, received public comments, and ultimately issued a C-WECS permit in August 2022.

Plaintiffs are County residents who oppose the project. They own properties near proposed turbine sites. They are concerned that turbines would interfere with the use, enjoyment, and values of their properties and could injure bald eagles, migratory birds, bats, butterflies, and other winged species. In Iowa state court, plaintiffs filed a 219-page complaint against the County and its Board, supervisors, zoning administrator, and attorney. Plaintiffs made numerous claims. These included claims that the Wind Ordinance is void for vagueness under the due process clauses of the federal and state constitutions; the Board did not follow proper procedures when it enacted the Wind Ordinance, and an older zoning ordinance still controls;[4] issuance of a permit to SHW was arbitrary and capricious under Iowa law; the Board unlawfully favored SHW by considering its application despite a local moratorium on new wind projects; the Board exceeded its authority under home-rule provisions in Iowa law; one Board member was conflicted when he voted because

---

[4]A 1997 ordinance imposes a height limit of 2½ stories on new structures in the agricultural zone. Of course, commercial wind turbines are normally much taller. *See* Patricia E. Salkin, 4 Am. L. Zoning § 37:9 (5th ed.) ("Because commercial wind turbines are tall and are most effectively placed above tree-lines on hilltops, ridgelines, and elevated plateaus, they can often be seen from a great distance and may alter landscapes." (footnote omitted)); *id.* at n.66 ("Wind turbine sizes vary depending on the type of turbine. A large utility-size turbine would have a total height . . . of about 440 feet.").

-4-

he had an interest in a Nebraska company that explores for minerals, some of which can be used in wind turbines; and County officials violated the Iowa Open Meetings Act by holding nonpublic meetings with Invenergy and SHW lobbyists. Plaintiffs' entire complaint sounded in Iowa law, except for their federal due process claim.

Based on the federal due process claim, defendants removed this case from state court to federal court. *See* 28 U.S.C. §§ 1441(a), 1446. The district court exercised federal question jurisdiction over the federal due process claim and supplemental jurisdiction over the state claims. *See id.* §§ 1331, 1367(a). SHW intervened to defend its interests in the project. *See* Fed. R. Civ. P. 24.

During the district court proceedings, County voters elected County officials who opposed the project. Plaintiffs moved to remand the case to Iowa state court, defendants (the new officials) consented to remand, and intervenor SHW opposed remand. Against the express desires of plaintiffs and defendants, the district court declined to remand the case. It cited a "public interest" in developing alternative energy resources, federal and state interests in developing these resources, SHW's interest in moving forward with the project, and judicial interests in "efficiency" and "economy, convenience, fairness, and comity." *Hunter v. Page Cnty.*, 653 F. Supp. 3d 600, 606, 613, 615 (S.D. Iowa 2023).

On January 31, 2023, the district court dismissed plaintiffs' claims. It first concluded that plaintiffs had constitutional but not prudential standing to bring their federal due process claim. Thus, it dismissed this claim and cited implausibility as an alternative rationale. Next, the district court exercised its discretion and retained supplemental jurisdiction over plaintiffs' state claims, notwithstanding its dismissal of the only federal claim. Then, the district court addressed defendants' and intervenor's Rule 12(b)(6) motions. The district court concluded that plaintiffs' state claims were time-barred under Iowa law and implausible on their face. *See id.* at 616 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On February 3, 2023, the County's zoning administrator sent a letter to SHW, purporting to revoke the C-WECS permit. SHW appealed to the County Board of Adjustment. On March 3, 2023, the Board of Adjustment upheld the decision to

revoke the permit.[5] On March 9, 2023, SHW filed a complaint in the federal district court against the County, Board of Supervisors, Board of Adjustment, zoning administrator, and other County officials. Am. Compl., *SHW v. Page Cnty.*, No. 1:23-CV-00005-SMR-SBJ (S.D. Iowa Mar. 9, 2023), ECF No. 4. Among other things, SHW claimed violations of its property interests under the Takings and Due Process Clauses of the United States Constitution. U.S. Const. amends. V, XIV.

On February 27, 2023, plaintiffs filed a notice of appeal in this case. No party suggested that this case became moot after the zoning administrator's decision of February 3, 2023, or the Board of Adjustment's decision of March 3, 2023.

## II. *Discussion*

In this appeal, the parties have meaningfully addressed a number of issues. However, we begin this discussion with an issue that no party raised: whether this case became moot after the County revoked SHW's C-WECS permit.

## A. *Mootness*

Article III of the United States Constitution requires this court, in every case, to make an independent determination about its own jurisdiction. *Thomas v. Basham*, 931 F.2d 521, 522–23 (8th Cir. 1991). Even if the parties do not raise a jurisdictional issue, it is the court's duty to raise the issue of its own accord, or sua sponte. *Id.* at 523. At all stages of litigation, including throughout any appeals, "a live case or

_____

[5]Under the res judicata doctrine, an administrative agency's decision can have preclusive effect. *Johnson v. Vilsack*, 833 F.3d 948, 953–54 (8th Cir. 2016); *accord Ghost Player, LLC v. Iowa Dep't of Econ. Dev.*, 906 N.W.2d 454, 465 (Iowa 2018) (same under Iowa law). However, res judicata is not an issue here. Even if the Board of Adjustment qualifies as an administrative agency, acted in the requisite capacity, and issued a final and binding decision, its decision would not bind us because this case involves different parties. *See Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 870 (8th Cir. 2023) (stating that, under federal law, both actions must "involve the same parties"); *accord Pavone v. Kirke*, 807 N.W.2d 828, 836 (Iowa 2011) (same under Iowa law). In the zoning appeal, the parties were SHW and County defendants. Here, the parties are County residents and County defendants.

controversy" must exist between the parties. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997); *see* U.S. Const. art. III, § 2, cl. 1 (defining the judicial power). At every stage, the plaintiff must be injured in fact, a causal connection must exist between the injury and an action of the defendant, and there must be a likelihood that a favorable decision from the court will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Absent a case or controversy of this kind, the court has "no business deciding legal disputes or expounding on law." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quotation marks omitted).

A pending case becomes moot when circumstances change and the parties' dispute ceases to exist. *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013). A moot case is a "dispute [that] is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009). After a case becomes moot, plaintiffs may continue to have general interests in some matter of public policy. But the proper forum for advocating these interests is not a federal courthouse. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (discussing the federal judiciary's circumscribed role). A federal court loses its jurisdiction when plaintiffs no longer have a "personal stake in the outcome of the lawsuit," or a stake unique to them. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

Here, plaintiffs alleged various harms arising from the County's decision to issue a C-WECS permit to SHW. Essentially, they contended that the County violated their rights by approving a commercial wind project near their properties. When the County issued the permit and plaintiffs filed their lawsuit in 2022, a live case or controversy existed between them. The claims remained viable when the district court issued its order on January 31, 2023. Days later, the County's zoning administrator revoked the permit. SHW appealed to the Board of Adjustment, which upheld the revocation. At that point, almost all of plaintiffs' claims died. The object of their lawsuit was no longer viable. Plaintiffs might have lost their battle in the district court, but they won their war in the County government. *Cf. Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (observing that the repeal of a law ordinarily moots a case, unless the "capable of repetition yet evading

-7-

review" rule applies); *Randolph v. Rodgers*, 170 F.3d 850, 856 n.7 (8th Cir. 1999) ("The capable of repetition yet evading review rule is an extraordinary and narrow exception to the mootness doctrine.").

The absence of a live case or controversy notwithstanding, plaintiffs have continued to press their expired claims in this appeal. Even though they are not presently injured, plaintiffs argue that the federal judiciary must still construe the Wind Ordinance and issue a declaratory judgment. Specifically, plaintiffs argue that the County could repeat its action under the Wind Ordinance and issue a new C-WECS permit near their properties, which could violate their rights. Oral Argument at 1:14–2:47, 11:01–11:48. Alternatively, intervenor SHW argues that this case remains live because our decision here could have some collateral effect on SHW's takings and due process claims in its separate action against County defendants, which it filed in the federal district court. *Id.* at 15:17–16:07, 19:26–23:22; *see SHW v. Page Cnty.*, No. 1:23-CV-00005-SMR-SBJ, ECF Nos. 4, 15.[6]

We decline plaintiffs' invitation to construe the Wind Ordinance, or instruct the district court to do so, in the absence of an ongoing dispute that directly concerns them. At this stage, this is no longer a dispute "about the plaintiffs' particular legal rights." *Alvarez*, 558 U.S. at 93. It is about some unknown and unknowable future set of plaintiffs, near whose properties a future permit might issue. This appeal has become "an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects other [County] citizens. And a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.*

---

[6]The County suggests a "ripeness issue." Oral Argument at 28:18–29:33. Mootness and ripeness are both aspects of the Constitution's case-or-controversy requirement. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The difference is that a case is *moot* when it has died and *unripe* when it has never lived. *Already*, 568 U.S. at 91; *Texas v. United States*, 523 U.S. 296, 300 (1998).

Given that County voters recently replaced County officials and that County officials recently revoked SHW's C-WECS permit, there is no reason to think that *these plaintiffs* face any actual or threatened harm greater than that of other County residents. *Id.* Their arguments on appeal are either generalized grievances against a past set of County officials, who no longer hold office, *see Lujan*, 504 U.S. at 568, 575–76, or hypothetical, conjectural, or speculative grievances against some future set of County officials, who might (or might not) act under the Wind Ordinance and might (or might not) approve future applications for permits, *see id.* at 560–61. Even when parties seek a declaratory judgment, as here, the federal courts do not decide disputes about generalized past grievances or hypothetical future harms. Plaintiffs present "no controversy of sufficient immediacy and reliability to warrant declaratory relief." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012); *cf. City Union Mission, Inc. v. Sharp*, 36 F.4th 810, 815–16 (8th Cir. 2022) (concluding that a county official's resignation mooted a declaratory judgment action when remaining officials took the position that the previous official was mistaken); *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021) (explaining that the court usually dismisses a case as moot when a governmental defendant has voluntarily ceased its challenged behavior).

Similarly, we decline intervenor SHW's invitation. When we address a case's potential mootness, we concern ourselves with "the plaintiffs' particular legal rights" and not the interests of outside parties. *Alvarez*, 558 U.S. at 93. Here, plaintiffs' case against the County became moot when the County changed its position and revoked the permit of which plaintiffs complained. Then, SHW brought its own appeal to the Board of Adjustment and its own lawsuit to the federal district court. In its federal lawsuit, SHW claimed, among other things, that the County violated its property and due process rights. *See* Am. Compl. at 29–31, *SHW v. Page Cnty.*, No. 1:23-CV-00005-SMR-SBJ, ECF No. 4. The local appeal or the federal lawsuit was the proper vehicle for SHW to litigate its interests. The instant case is not a substitute vehicle. *See Arizonans*, 520 U.S. at 67; *Lujan*, 504 U.S. at 560–61; *cf. Local No. 93, Int'l*

*Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528–30 (1986). Under these circumstances, a party must bring its own challenge. SHW has done so twice.[7]

All that remains, then, are plaintiffs' claims against County officials under the Iowa Open Meetings Act. Iowa Code §§ 21.1–.11. The County's revocation of SHW's permit mooted all other claims. Under Iowa law, an Open Meetings violation is an independent harm on which an Iowan may recover statutory damages, attorney fees, and costs, regardless of the final action public officials took. *Id.* § 21.6.

Here, the issuance of the C-WECS permit and its later revocation make no difference to plaintiffs' Open Meetings claims for statutory damages, attorney fees, and costs. If County officials held nonpublic meetings in violation of Iowa law and if plaintiffs timely filed their complaint, then plaintiffs have a right to recover under Iowa law. Furthermore, because plaintiffs were interested in the siting of new wind turbines as affected property owners and observers of certain animal species, these state claims are justiciable in federal court. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937) (defining justiciability); *Iowa League of Cities v. EPA*, 711 F.3d 844, 870–71 (8th Cir. 2013) ("[T]he violation of a procedural right can constitute an injury in fact so long as the procedures in question are designed to protect some threatened concrete interest of the petitioner that is the ultimate basis of his standing." (cleaned up)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (stating that aesthetic injuries are

---

[7]Above, we have already described SHW's appeal to the Board of Adjustment and the Board of Adjustment's rejection of the appeal on March 3, 2023. SHW chose not to appeal further. *See* Iowa Code § 414.15 (affording persons aggrieved by board of adjustment decisions 30 days to petition for judicial review in state court). Instead, SHW filed a federal lawsuit against the Board of Adjustment, its members, and other defendants. The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa, dismissed the lawsuit on March 18, 2024. She gave SHW 14 days to amend its complaint. *See SHW v. Page Cnty.*, No. 1:23-CV-00005-SMR-SBJ, ECF No. 15. We express no opinion on that case.

injuries in fact).[8] The County's revocation of SHW's permit provided plaintiffs the equivalent of the vacatur they sought under Iowa Code § 21.6(3)(c), but not the monetary sums they seek under Iowa Code §§ 21.6(3)(a) and 21.6(3)(b).

Plaintiffs' Open Meetings claims for damages, fees, and costs continue to present a live case or controversy. We now address these claims.

## B. *Iowa Open Meetings Act*

When we interpret a state statute, we review de novo the determinations of the district court. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). We take our guidance from decisions of the state's highest court, which we treat as binding. *N. Oil & Gas, Inc. v. EOG Res., Inc.*, 970 F.3d 889, 892 (8th Cir. 2020). When there are no such decisions on point, we predict how a state's highest court would decide an issue by looking to other reliable indicators of state law, including the decisions of other state courts, decisions in analogous cases, and considered dicta. *Id.*; *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023).

The Iowa Open Meetings Act aims to promote openness and transparency in state and local government. Iowa Code § 21.1. The Act imposes on state and local government bodies, including county boards, a duty to conduct their official business in open session, or "meeting[s] to which all members of the public have access." *Id.* § 21.2. The Act "is to be liberally construed. Its purpose is to prohibit secret or star chamber sessions of public bodies, to require such meetings to be open and to permit the public to be present." *Donahue v. State*, 474 N.W.2d 537, 539 (Iowa 1991) (internal quotation marks omitted). "Any aggrieved person, taxpayer to, or citizen of, the state of Iowa, or the attorney general or county attorney" may bring an action to enforce the Act. Iowa Code § 21.6(1). If the court finds a violation, it must assess statutory damages of $100 to $2,500, which the defendant pays to the government. *Id.* § 21.6(3). In addition, a violating defendant must pay the plaintiff's "costs and

---

[8]The existence, scope, and remedies for violations of plaintiffs' procedural rights are questions of state law, but their justiciability in federal court is a question of federal law. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

reasonable attorney fees." *Id.* It is "mandatory" for the court to award these sums. *See Olinger v. Smith*, 889 N.W.2d 476, 479–80 (Iowa Ct. App. 2015).

Here, plaintiffs claim that County officials denied them the right to be present at meetings pertinent to SHW's application. They allege that County officials held nonpublic meetings with representatives of Invenergy and SHW and that no exceptions recognized by the Act applied. *See* Iowa Code § 21.5 (enumerating when public bodies may hold closed sessions). If plaintiffs were to prove these allegations, then County officials would be required to pay statutory damages to the government, as well as costs and reasonable attorney fees to plaintiffs. *Id.* § 21.6(3). Plaintiffs' concrete interest in recovering damages, costs, and fees, joined with their underlying property interests and aesthetic interests in the siting of new wind turbines, suffices for federal jurisdiction. *See Iowa League of Cities*, 711 F.3d at 870–71.

As to plaintiffs' Open Meetings claims, the district court (1) concluded that this case was properly removed from state court to federal court, (2) exercised supplemental jurisdiction, (3) denied plaintiffs' motion to remand, (4) declined to abstain under the *Pullman* doctrine,[9] and (5) dismissed plaintiffs' Open Meetings claims as time-barred under Iowa law and implausible on their face under federal law. Plaintiffs meaningfully address these issues in their opening brief. Therefore, we will consider each one in turn.

### C. *Removal Jurisdiction*

The federal removal statute provides, in relevant part:

> § 1441(a). [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

---

[9]*See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

§ 1446(b)(2)(A). When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

28 U.S.C. §§ 1441(a), 1446(b)(2)(A) (adding subsection numbers).

Plaintiffs filed their lawsuit in Iowa state court, and defendants removed to the federal district court. Defendants cited plaintiffs' federal due process claim as the basis for federal jurisdiction. *See id.* § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). On appeal, plaintiffs dispute the propriety of removal. They argue that defendant Jacob Holmes—one of the County supervisors—was a necessary party and did not "join in or consent to . . . removal." *Id.* § 1446(b)(2)(A). Defendants argue that Holmes's consent to removal was unnecessary because he had not been "properly joined and served" or else was a nominal party. *Id.*[10]

When parties raise issues related to service of process, we review the district court's factual findings for clear error and its interpretation of the applicable service rules de novo. *See United States v. Rainey*, 605 F.3d 581, 583 (8th Cir. 2010) (per curiam) (serving notice in a criminal proceeding); *Norris v. Causey*, 869 F.3d 360, 368 (5th Cir. 2017) (applying clear error review when a question arose about whether the process server went to the correct residence). A party's nominal or necessary status is a jurisdictional issue, which we review de novo. *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012).

Here, the district court found that plaintiffs served process on the County and the Board, but not on individual County officials. *Hunter*, 653 F. Supp. 3d at 614.

---

[10]The Board has three supervisors. Alan Armstrong and Chuck Morris voted for SHW's application, and Jacob Holmes voted against it. Appellants' Br. at 11 n.4. A candidate running on an anti-turbine pledge defeated Armstrong in a 2022 election and took office on January 3, 2023. *Id.* Morris resigned the same day. *Id.* Thus, the Board changed from being pro-turbine in 2022 to being anti-turbine in 2023.

Plaintiffs' opening appellate brief states: "[S]even copies of the Original Notice and Petition, each in separate folders bearing one defendant's name, were personally served on the individual who acts as both the Page County Auditor and Secretary of the Board." Appellants' Br. at 11. We accept these facts as accurate and not clearly erroneous. The question for us is: Was this attempted service proper under 28 U.S.C. § 1446(b)(2)(A)? More specifically, did plaintiffs properly serve Holmes by leaving a folder addressed to him with the County auditor and Board secretary?

Because plaintiffs' attempt to serve process on Holmes occurred while an Iowa state court held jurisdiction over this case, Iowa's rules govern. In Iowa, service of process may be accomplished through personal service or an alternate method. Iowa R. Civ. P. 1.305–.306. Iowa's methods of personal service are familiar. They include service on a defendant's person, home, or spouse. *Id.* at 1.305(1). Relevant here, they also include "[u]pon any *county* by serving its *auditor* or the chair of its board of supervisors" or "[u]pon a governmental *board*, commission or agency, by serving its presiding officer, clerk or *secretary*." *Id.* at 1.305(9), (13) (emphasis added). Iowa's alternate method is not relevant here. *Id.* at 1.306.

Assuming Holmes is a necessary party in this case, we agree with the district court that the County and the Board did not need to obtain Holmes's consent when they removed this case to federal court. At the moment of removal, Holmes had not been "properly joined and served." 28 U.S.C. § 1446(b)(2)(A); *see Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) ("It is axiomatic the court's jurisdiction is measured . . . at the time of removal."). Plaintiffs did not serve process on Holmes's person, home, or spouse, nor by any other authorized method. Instead, they served process on the County auditor and Board secretary. Under Iowa law, this action was sufficient for serving the County and the Board, but it was not sufficient for serving Holmes separately. When this case was removed, all properly joined and served defendants consented. Therefore, removal jurisdiction existed.

D. *Supplemental Jurisdiction*

After removal, the district court exercised federal question jurisdiction over plaintiffs' federal due process claim and supplemental jurisdiction over their state

claims. *See* 28 U.S.C. §§ 1331, 1367. We now address whether this exercise of supplemental jurisdiction was proper. Under the federal statute:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts *shall have* supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*Id.* § 1367(a) (emphasis added). Subsection (b) concerns diversity cases and does not apply here. Subsection (c) does apply. It provides:

> (c) The district courts *may decline* to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c) (emphasis added and spacing altered).

The purpose of supplemental jurisdiction is to avoid duplicate, parallel, or divided litigation between federal and state courts. Richard D. Freer, *Supplemental Jurisdiction—Background and Overview*, *in* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567 (3d ed. 2008). When federal and state claims are both present and "derive from a common nucleus of operative fact," the district court may "try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 771 (8th Cir. 2022) (same).

Our review of supplemental jurisdiction has two steps. First, we review de novo whether the district court *could* exercise supplemental jurisdiction under 28

U.S.C. § 1367(a). *See Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005) ("We review the question of subject matter jurisdiction de novo."); *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) ("Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory . . . ."); *McLaurin v. Prater*, 30 F.3d 982, 984 (8th Cir. 1994) ("The statute's use of the word 'shall' . . . is a mandatory command."). Second, if the first step yields an affirmative answer, we review for abuse of discretion whether the district court *should* have exercised or declined supplemental jurisdiction under § 1367(c). *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011). We address the first step in this section and the second step in the next section.

Applying § 1367(a), the district court correctly concluded that plaintiffs' federal due process claim and their state claims formed part of the same case or controversy. *Hunter*, 653 F. Supp. 3d at 610–12. At various times, plaintiffs have urged that supplemental jurisdiction never existed in this case because there was no federal claim to which the state claims could append. Plaintiffs' own complaint belies this assertion. On its face, it asserted a federal due process claim.[11]

The appearance of a federal due process claim on the face of plaintiffs' complaint created a federal question, provided a basis for removal, and consequently provided a basis for supplemental jurisdiction over plaintiffs' related state claims. Plaintiffs were the masters of their complaint. If they did not want to risk removal of their case to federal court, they should not have pleaded a federal claim. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining the well-pleaded

---

[11]*See, e.g.*, R. Doc. 1-2, at 108–12, ¶ 605 ("[T]he Ordinance is illegal and fails to meet the requirements of the Due Process Clause because it is so vague and standardless that it leaves the public uncertain is to [sic] what conduct it permits and what conduct it prohibits."); ¶ 618 ("The vagueness and contradiction within the Ordinance renders it unconstitutional under the Due Process clauses of the United States and State of Iowa Constitutions."); ¶ 625 ("This structure violates the Due Process Clause."); ¶ 628 ("[T]he Ordinance as adopted by the Board of Supervisors is unconstitutionally vague and void, and violates the Due Process Clause.").

complaint rule in removal cases). "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009).

### E. *Motions to Remand*

Even if a district court has supplemental jurisdiction under § 1367(a), that does not answer whether it should exercise supplemental jurisdiction under § 1367(c). On this second step, Supreme Court and circuit precedent afford great latitude and substantial deference to the district court. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("purely discretionary"); *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016) ("broad discretion"); *Brown v. Mortg. Elec. Reg. Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013) ("very broad" discretion). As discussed above, we review a district court's decision to retain or remand a case under § 1367(c) for abuse of discretion. *Crest*, 660 F.3d at 359.

A district court "grappl[ing] with whether it *should* exercise supplemental jurisdiction" must "consider[] the four factors enumerated in the federal supplemental-jurisdiction statute." *Wong v. Minn. Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016). "An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). The statute's four factors are: (1) whether "the claim raises a novel or complex issue of State law," (2) whether state claims "substantially predominate[]" over federal claims, (3) whether "the district court has dismissed all claims over which it has original jurisdiction," and (4) whether "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

The Supreme Court has identified four interests—"comity, fairness, judicial economy, and convenience"—that underlie the supplemental jurisdiction statute. *Marianist Province of U.S. v. City of Kirkwood*, 944 F.3d 996, 1003 (8th Cir. 2019) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Exercising its discretion under § 1367(c), a court must focus on the four factors enacted by

Congress and construe these factors in light of the four interests articulated by the Supreme Court. *See McLaurin*, 30 F.3d at 985 ("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); *see generally Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 24 F.3d 1545 (9th Cir. 1994) (reviewing the statute's history and its relationship with the case law), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). We now address each of the § 1367(c) factors.

## 1. *Novel or Complex Issues of State Law*

A district court "may decline to exercise supplemental jurisdiction" over a state claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c). The district court concluded that this case raises no novel or complex state issues. *See Hunter*, 653 F. Supp. 3d at 615. Plaintiffs disagree, arguing that "[t]here are no reported Iowa state court decisions interpreting [the County's wind or zoning ordinances]." Appellants' Br. at 37. We agree with the district court.

A case raises a novel or complex issue of state law when the case presents a state law issue of first impression, state law is unsettled, the case touches upon a fundamental interest of the state government (especially a state constitutional issue), or federal resolution of the case would deprive the state courts of a fair opportunity to develop state law on a significant issue. *See Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013); *Brookshire Bros. Holding v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 254 n.33 (3d Cir. 2008) (per curiam); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003); *Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997); *Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 911 (N.D. Cal. 2019).

Here, plaintiffs' state claims are neither novel nor complex. Although Iowa's courts have not specifically interpreted the County's wind or zoning ordinances, they have interpreted the wind and zoning ordinances of other counties. *See, e.g.*, *Mathis v. Palo Alto Cnty. Bd. of Supervisors*, 927 N.W.2d 191, 200 (Iowa 2019) (upholding

a wind ordinance and project against challenges by county residents). Iowa's highest court has announced a "general rule that zoning determinations are a legislative function of a city council or board of supervisors." *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 40 (Iowa 2016). Likewise, Iowa's courts have an established body of case law on the Open Meetings Act. *See, e.g.*, *Hutchison v. Shull*, 878 N.W.2d 221 (Iowa 2016); *City of Postville v. Upper Explorerland Reg'l Plan. Comm'n*, 834 N.W.2d 1 (Iowa 2013). Iowa's case law provided sufficiently clear guidance for the district court to address plaintiffs' state claims. The first factor weighs in favor of the district court's decision.

## 2. *Predominance of State Claims*

A district court "may decline to exercise supplemental jurisdiction" over state claims if the state claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). Here, the district court had original jurisdiction over plaintiffs' federal due process claim and supplemental jurisdiction over their state claims. The state claims greatly outnumbered and substantially predominated over the federal due process claim. *See Hunter*, 653 F. Supp. 3d at 609–10, 614. On appeal, plaintiffs contest the weight that the district court assigned this factor. *See* Appellants' Br. at 40.

Reviewing for abuse of discretion, we ask whether the district court committed "a clear error of judgment" when it assigned a factor a certain weight. *Harry Brown's*, 563 F.3d at 316. This "standard of review is a narrow one." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). A district court commits a clear error of judgment when it has no "rational basis" for the weight it assigns to a factor, *Madison Cnty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393, 397 (8th Cir. 1980); it reaches "a patently erroneous result," *In re Apple, Inc.*, 602 F.3d 909, 911 (8th Cir. 2010) (per curiam); or our court is "left with the definite and firm conviction that an error has been made," *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) (internal quotation marks omitted).

Here, plaintiffs' federal due process claim was not the gravamen of their complaint. The district court took this into account. Having carefully reviewed the district court's order, we are not definitely and firmly convinced the district court gave irrational or patently erroneous weight to this factor. It had broad discretion to determine the weight it accorded the predominance of state claims. The statute allows a district court to remand a case when the state claims predominate over a federal claim, but it does not require this result, especially where, as here, other § 1367(c) factors point in a different direction. The predominance of state claims favors plaintiffs, but it is only one factor in a multi-factor analysis.

### 3. *Dismissal of the Federal Claim*

A district court "may decline to exercise supplemental jurisdiction" over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, the district court dismissed the federal due process claim for lack of prudential standing and as implausibly pleaded. *Hunter*, 653 F. Supp. 3d at 612. Then, it disposed of plaintiffs' state claims. In two sentences, plaintiffs assert that the district court, by proceeding in this way, abused its discretion. They do not elaborate any further. *See* Appellants' Br. at 41.

"Appellants bear a heavy burden in showing an abuse of discretion." *United States v. Adkins*, 842 F.2d 210, 212 (8th Cir. 1988). On this third factor, plaintiffs make no real showing. Again, the statutory language is permissive. *See* 28 U.S.C. § 1367(c) ("may decline to exercise supplemental jurisdiction"). On appeal, there is a strong presumption that a district court properly exercised its discretion and gave every factor appropriate weight. *See Adkins*, 842 F.2d at 212. Certainly, the district court could have remanded plaintiffs' state claims after it dismissed their federal claim. *See Gibbs*, 383 U.S. at 726. But the district court opted against remand, and plaintiffs offer no reason why we should conclude that the district court abused its discretion. *See Carlsbad*, 556 U.S. at 639 ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) ("If the district court dismisses every

claim over which it had original jurisdiction, the court maintains its broad discretion to exercise supplemental jurisdiction over any remaining state-law claims.").

### 4. *Other Compelling Reasons*

Finally, the statute allows the district court, "in exceptional circumstances," to consider "other compelling reasons" bearing on jurisdiction. 28 U.S.C. § 1367(c)(4). This fourth factor allows the district court to consider the underlying interests the Supreme Court has articulated: comity, fairness, judicial economy, and convenience. *Marianist Province*, 944 F.3d at 1003; *Exec. Software*, 24 F.3d at 1558–59. This factor "permit[s] courts to extend the doctrine's underlying values beyond previously recognized applications whenever doing so [is] consistent with those values." *Exec. Software*, 24 F.3d at 1559 (emphasis omitted).

The district court expressly referred to interests justifying retention of this case. *Hunter*, 653 F. Supp. 3d at 613, 615. Specifically, it noted the large number of filings, the late date at which defendants consented to remand, the "significant investment of time and energy by the parties and the Court," the unnecessary delay in final resolution that a remand order would produce, and the "significant time and money" that SHW had already invested in its project. *Id.* at 615. We have previously allowed district courts to consider similar interests. *See, e.g.*, *United Steelworkers*, 743 F.3d at 1141 ("Given the substantial amount of time and judicial resources expended in this case and the well-settled principles of state law . . . we find no error in the district court's exercise of supplemental jurisdiction . . . ."). We give the same allowance here. The district court did not abuse its discretion when it considered other compelling reasons, rooted in the case law interests, for denying remand.

\*\*\*

In sum, a district court presented with a motion to remand must consider the four statutory factors in its supplemental jurisdiction analysis. 28 U.S.C. § 1367(c). Here, the district court considered all four factors and denied the motions to remand. On the record before us, we affirm the district court. Its decision to address plaintiffs' state claims was a permissible exercise of its "broad discretion." *Elmore*, 844 F.3d at 767; *United Steelworkers*, 743 F.3d at 1141.

## F. Pullman *Abstention*

Next, plaintiffs argue that the district court erred by not abstaining under the *Pullman* doctrine. The *Pullman* doctrine, or *Pullman* abstention, derives from the Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In *Pullman*, the Texas Railroad Commission issued an order to ban railroads from putting black employees in charge of sleeper cars. *Id.* at 497–98. The Pullman Company and other plaintiffs sued the Commission and challenged the order. They argued that the order violated the United States Constitution's Equal Protection, Due Process, and Dormant Commerce Clauses. *Id.* at 498. A three-judge federal district court agreed and issued an injunction. *Id.*

The Supreme Court reversed. It said that the district court had "touche[d] a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Id.* Observing that Texas law empowered the Commission to counteract "unjust discrimination . . . [and] any and all other abuses in the conduct of railroads," the Court questioned whether the Commission's order was not designed to prevent some abuse in the railroad industry. *Id.* at 499 (quoting Tex. Civ. Stat. art. 6445). The Court continued: "Reading the Texas statutes and the Texas decisions as outsiders without special competence in Texas law, we would have little confidence in our independent judgment regarding the application of that law to the present situation." *Id.* Even though the district court had comprised "an able and experienced circuit judge" and "two capable district judges trained in Texas law," the Supreme Court reversed the injunction. *Id.* It cautioned federal courts to abstain from making "unnecessary ruling[s]" that create "needless friction with state policies," particularly when a state's own courts have not had the opportunity to rule on an important issue for themselves. *Id.* at 499–501.

The *Pullman* doctrine now exists in an "extraordinary and narrow" form. *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "*Pullman* abstention is a limited exception to the virtually unflagging obligation that federal courts have to exercise their jurisdiction in proper cases." *Sisney v. Kaemingk*, 15 F.4th 1181, 1189 n.2 (8th Cir. 2021) (internal quotation marks omitted). Under *Pullman*, a federal court may abstain from deciding a case only if the case raises a

federal constitutional question, and the answer to that question necessarily depends on state courts' construction of ambiguous state law. *Id.*; *see Burris v. Cobb*, 808 F.3d 386, 388 (8th Cir. 2015) (asking whether state law is "susceptible to an interpretation that would avoid any federal constitutional question").

We have employed a five-factor test to determine when *Pullman* abstention is appropriate. *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998). We review the district court's decision to abstain or not abstain under *Pullman* for abuse of discretion. *Id.* at 840. Here, it is unnecessary to apply our five-factor test. After the district court dismissed plaintiffs' federal due process claim, no federal constitutional question remained. The absence of a federal constitutional question excepts this case from *Pullman*'s "narrowly limited" and "judge-made doctrine of abstention." *Zwickler v. Koota*, 389 U.S. 241, 248 (1967).

Accordingly, we reject plaintiffs' argument that the district court should have abstained under *Pullman*. Plaintiffs invoke no other abstention doctrine. *See, e.g.*, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).[12]

## G. *Plausibility Standard*

Finally, the district court dismissed plaintiffs' Open Meetings claims, concluding that these claims were untimely under Iowa law and implausibly pleaded under federal law. *Hunter*, 653 F. Supp. 3d at 617–18. These two grounds are independent, and either of them is sufficient for dismissal. On appeal, plaintiffs argue that the district court erred on both grounds. As a federal court of appeals,

---

[12]The federal abstention doctrines are not jurisdictional. If parties do not raise these doctrines, federal courts have no duty to raise them on their own motion, or sua sponte. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 n.8 (1987); *Wassef v. Tibben*, 68 F.4th 1083, 1086 n.3 (8th Cir. 2023); *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1093 (8th Cir. 2021); *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973–74 (8th Cir. 2011).

which authoritatively construes federal law, we choose to begin our analysis with the federal plausibility issue. *See Ag Spectrum Co. v. Elder*, 865 F.3d 1088, 1091 (8th Cir. 2017) (explaining that our court's views of Iowa law are merely predictive of how an Iowa state court would decide an issue).

"We review the district court's grant of a motion to dismiss de novo." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). "[M]atters removed to federal court are governed by the current federal pleading standard." *Novak v. JPMorgan Chase Bank, N.A.*, 518 F. App'x 498, 501 (8th Cir. 2013) (unpublished per curiam); *see* Fed. R. Civ. P. 81(c)(1). Thus, we apply Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Twombly*, 550 U.S. at 554–56 (2007).

Under Rule 12(b)(6), a federal court will grant a motion to dismiss for failure to state a claim, unless the complaint alleges facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must state a claim that is "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plaintiffs' complaint might have survived Iowa's more permissive pleading standard when plaintiffs brought this case in Iowa court. Iowa R. Civ. P. 1.421(1)(f); *see Nahas v. Polk Cnty.*, 991 N.W.2d 770, 776–77 (Iowa 2023) ("[W]e have explicitly declined to replace our notice pleading system with the heightened pleading standards that federal courts use."). However, we agree with the district court that, once this case was removed, the complaint was insufficient to satisfy the more demanding standard of Rule 12(b)(6).[13] In 219 pages, the complaint spends

---

[13]Generally, a federal district court should allow a party to replead, if the party so requests, when a case is removed from a state court with a pleading standard less demanding than Rule 12(b)(6). *See Peña v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013); *see also* Joan Steinman, Mary Kay Kane & A. Benjamin Spencer, *Procedure*

only a few pages on the Open Meetings claims. All of its allegations relevant to these claims are "speculative" or "conclusory." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. On its face, the complaint does not provide sufficient factual content to support a reasonable inference that County officials violated plaintiffs' Open Meetings rights. The complaint does not raise plaintiffs' right to relief above a speculative level. Regardless of how an Iowa court might have ruled, "barebones allegation[s]," like the allegations that plaintiffs made here, are "insufficient to state a claim" in federal court. *Zink v. Lombardi*, 783 F.3d 1089, 1103 (8th Cir. 2015) (per curiam) (en banc). Rule 12(b)(6) dismissal was proper.[14]

Because we affirm the district court's dismissal of plaintiffs' Open Meetings claims as facially implausible under Rule 12(b)(6), we do not address the timeliness of these claims under Iowa law.

### III. *Conclusion*

The County's revocation of SHW's C-WECS permit, shortly after the district court issued its order, mooted most of plaintiffs' claims. The only claims not mooted are their claims against County officials under the Iowa Open Meetings Act. The

---

*After Removal*, *in* 14C Wright & Miller, *Federal Practice and Procedure* § 3738 (rev. 4th ed. 2023); Glenda K. Harnad & Karl Oakes, *Repleading or Amendment of Pleading in Removed Case*, 77 C.J.S. Removal of Cases § 163. No request to amend the complaint appears to have been made in this case.

[14]*See, e.g.*, R. Doc. 1-2, at 102–06, ¶ 572 (alleging that it was "not possible for the Board to have not met in closed meetings"); ¶ 573 ("It is not possible for the Board to have evaluated the WECS Application without hiring independent experts, implies the Board or its representatives met with Invenergy and its experts."); ¶ 580 ("closed sessions were held"); ¶ 583 (same); ¶ 585 ("The process adopted for negotiating the road use agreement and decommissioning plan is a ruse . . . ."); ¶ 589 ("The process adopted by the Board for conducting negotiations with Invenergy regarding the road use agreement and the decommissioning plan violates the Open Meetings Act . . . .").

district court permissibly exercised supplemental jurisdiction over these claims and properly dismissed them under Rule 12(b)(6).

We affirm the district court's dismissal of plaintiffs' Open Meetings claims, vacate the remainder of the district court's order, and remand to the district court with instructions to dismiss without prejudice plaintiffs' non-Open Meetings claims as moot. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) ("[V]acatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court."); *Epp v. Kerrey*, 964 F.2d 754, 756 (8th Cir. 1992) ("When a civil case becomes moot pending appeal, the appellate court normally vacates the order being appealed and remands to the district court with instructions to dismiss the case as moot."); *see also Bloodman v. Kimbrell*, 604 F. App'x 529, 529–30 (8th Cir. 2015) (unpublished per curiam) (modifying a district court's dismissal for mootness to be "without prejudice").

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the court's disposition of this appeal, and with Part II.B of the opinion, but would dismiss the claims addressed in Part II.A because they are not ripe for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998). As the court explains, "[o]btaining a C-WECS permit was merely the first of several steps that Invenergy and SHW would need to complete before proceeding with their proposed project. They would also need further regulatory approvals, including building or construction permits, a road-use agreement, and a decommissioning plan." *Ante*, at 4. The project may never come to fruition, and any assessment of the plaintiffs' challenges relating to the Wind Ordinance and issuance of a permit should wait until a more concrete controversy arises. Any hardship to the plaintiffs of postponing consideration is insufficient to justify review at this stage. I therefore deem it unnecessary to address whether the claims are also moot. *Cf. Driftless Area Land Conservancy v. Rural Utils. Serv.*, 74 F.4th 489, 493 (7th Cir. 2023).

———————————————————