WIGGINS, Justice.
Parties seek further review of a court of appeals decision affirming a district court order awarding $1000 in sanctions against plaintiffs counsel and making the sanctions payable to the Crawford County Jury and Witness Fund. We conclude the trial court did not abuse its discretion in fixing the amount of the sanction. We also conclude, however, the court abused its discretion in making the sanction payable to the jury and witness fund. Given the preference in our rule toward compensating victims, on remand the district court should enter an order requiring the sanction be paid in equal parts to the parties seeking the sanctions.
I. Background Facts and Proceedings.
Between February 2004 and February 2005, Gary Krai, as the executor and sole heir of his father’s estate, sold four forty-acre parcels of farmland located in Craw *587 ford County and owned by his father’s estate to four different buyers. Krai worked with Roger and Berneil Preul of McCord Insurance and Real Estate Corporation to sell the parcels. Krai primarily communicated with Roger about his desire to sell the parcels. In order to avoid capital gains taxes, Krai demanded each parcel be sold for $2000 per acre, which was the value placed on the land in the probate estate.
Michael Anderson purchased the first parcel in February 2004. Comstock Brothers, a partnership consisting of Merritt Daniel Comstock, Geary Steven Com-stock, and Douglas Comstock, bought the second parcel in March. In May, Richard Rosener bought the third parcel. Finally, Raymond Helkenn purchased the fourth parcel in February 2005. All of the buyers paid $2000 per acre.
In August 2005, Krai met with attorney Bradley Nelson about evicting Helkenn’s brother, Mark, who was living in one of Krai’s rental properties. Nelson became concerned Krai lacked the mental ability to take care of his own financial matters. After examining Krai’s bank records, Nelson discovered what he deemed to be suspicious checks totaling over $200,000 to certain individuals. Nelson became convinced these individuals were taking advantage of Krai. Nelson then petitioned the district court to establish a conserva-torship for Krai, which Krai accepted voluntarily. The court appointed Kristin Rowedder, Nelson’s office manager, as conservator for Krai in September 2005.
In May 2006, Rowedder, as conservator for Krai, filed suit against Anderson, the Comstocks, the Helkenn brothers, the Preuls, and McCord Insurance. Robert Laubenthal served as the attorney on behalf of Rowedder and Krai. In that capacity, he signed and filed the petition as well as subsequent pleadings, motions, and resistances.
The petition alleged the buyers, the Preuls, and their real estate company defrauded Krai by purchasing or facilitating the purchase of his land at “extremely low” prices, despite the fact that they knew or should have known that he was incompetent to conduct these transactions. The petition also alleged “certain of the defendants”[1] conspired to divest Krai of his assets through real estate purchases. Finally, it alleged the Preuls and their real estate company were professionally negligent and breached a fiduciary duty to Krai in facilitating the sales. The petition sought to rescind the sales and requested that the court establish a constructive trust on each property.
After discovery commenced, Rosener, the Comstocks, the Preuls, and McCord Insurance filed motions to compel discovery. These motions centered on Rowed-der’s answers to interrogatories relating to evidence of the alleged fraud and conspiracy. Rowedder’s answers repeatedly indicated she could not provide the specifics of her allegations until after the completion of discovery. In December, the district court ordered Rowedder to answer all of the discovery requests by January 20, 2007, or be subject to sanctions. On January 23, Rowedder filed a motion seeking an extension of this deadline.
Meanwhile, the Helkenns offered to sell their parcel back to Krai for the purchase price. After Rowedder refused, the Helk-enns filed a motion for sanctions alleging Rowedder brought the action to harass, *588 cause unnecessary delay, and needlessly increase the cost of litigation.
The Comstocks, Rosener, and Anderson filed separate motions for summary judgment. Rowedder resisted each. Following a hearing, the district court entered summary judgments finding Rowedder had failed to show any facts supporting her allegations despite the court having given her several opportunities to do so. Rowedder later resisted separate motions for summary judgment filed by the Preuls, McCord Insurance, and the Helkenns. Nonetheless, the district court entered summary judgments.
In January 2008, the Helkenns filed a request for a hearing on their previously filed motion for sanctions. Anderson, Ro-sener, and the Comstocks also filed motions for sanctions. Rowedder filed a notice of appeal. In February, the court stayed all of the motions before it pending the disposition of Rowedder’s appeal.
All of the defendants, except the Helk-enns, moved to dismiss the appeal as to them, arguing Rowedder had not timely or properly perfected an appeal. We dismissed Rowedder’s appeal without comment with respect to Anderson, the Com-stocks, and Rosener, thereby upholding the summary judgments in their favor.
We transferred the balance of the appeal, which involved the claims against the Helkenns, the Preuls, and McCord Insurance, to the court of appeals. The court of appeals affirmed summary judgment in favor of the Helkenns, but reversed and remanded with respect to the claim of professional negligence against the Preuls and McCord Insurance.
On remand, the district court held a trial on the professional negligence claims against the Preuls and McCord Insurance. A jury found they did not breach any fiduciary duty but were negligent in the sales to Rosener and Helkenn. The jury awarded damages of $15,400. Rowedder filed a motion for a new trial. The Preuls and McCord Insurance moved for a directed verdict and later for judgment notwithstanding the verdict or, alternatively, a new trial. The district court denied these motions.
Meanwhile, following the dismissal of the appeal as to them, Rosener, Anderson, and the Helkenns renewed their motions for sanctions. These renewed motions asked the district court to sanction Rowed-der and her attorneys. Rowedder resisted each motion.
The district court ordered sanctions against Rowedder’s attorney, Laubenthal. In doing so, the court found that although Laubenthal’s actions were not willful, vindictive, or taken in bad faith, the evidence demonstrated “the only actionable claims that ever existed were those against ... McCord Insurance and Real Estate and the Preuls.” The court noted Laubenthal did not have a prior history of sanctions. Further, the court stated it was presented with itemizations of attorney fees incurred by the various parties seeking sanctions, but not with evidence of Laubenthal’s ability to pay any sanctions imposed by the court. It also stated its belief that each party personally paid its own legal fees because it was not presented with any indication the parties had insurance coverage for their legal fees. The court assessed a sanction of $1000 and directed payment to the Crawford County Jury and Witness Fund. The court did not order sanctions against Rowedder.
The Helkenns, Anderson, and Rosener filed notices of appeal. The Preuls and McCord Insurance appealed the negligence verdict. We transferred the case to the court of appeals. The court of appeals found sufficient evidence to support the jury verdict in favor of Rowedder and *589 against the Preuls and McCord Insurance. The court rejected the arguments by Anderson, Rosener, and the Helkenns that the sanctions were too low and that the court should not have made the sanction payable to the jury and witness fund.
Rosener and the Helkenns filed applications for further review, which we granted.
II. Issues.
The court of appeals determined the district court did not abuse its discretion by awarding sanctions for $1000. The court of appeals also determined the order requiring the sanctions be paid to the Crawford County Jury and Witness Fund was proper under Iowa Rule of Civil Procedure 1.413(1). Finally, the court of appeals found the district court correctly overruled the motions of the Preuls and McCord Insurance for a directed verdict and for judgment notwithstanding the verdict or, alternatively, for a new trial. When we grant further review, we have the discretion to review all or part of the issues raised on appeal or in the application for further review. In re Marriage of Becker, 756 N.W.2d 822, 824 (Iowa 2008). In exercising our discretion, we choose only to review the amount of the sanctions and whether the court can require the sanction be paid to the jury and witness fund. Accordingly, we will let the court of appeals’ determinations that the award of sanctions was not an abuse of discretion and the affirmance of the judgment against the Preuls and McCord Insurance stand as the final decisions of this court. See Hills Bank & Trust Co. v. Converse, 772 N.W.2d 764, 770 (Iowa 2009).
III. Standard of Review.
We review a district court’s order imposing sanctions under our rules of civil procedure for an abuse of discretion. Everly v. Knoxville Cmty. Sch. Dist, 774 N.W.2d 488, 492 (Iowa 2009). An abuse of discretion occurs “when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.” Schettler v. Iowa Dist. Ct., 509 N.W.2d 459, 464 (Iowa 1993). An erroneous application of the law is clearly untenable. Waits v. United Fire & Cas. Co., 572 N.W.2d 565, 569 (Iowa 1997). When we review for an abuse of discretion, we will correct an erroneous application of the law. Weigel v. Weigel, 467 N.W.2d 277, 280 (Iowa 1991).
IV.The Amount of the Sanction.
The Iowa Rules of Civil Procedure provide in relevant part:
If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.
Iowa R. Civ. P. 1.413(1).
The primary purpose of sanctions under rule 1.413(1) is deterrence, not compensation. Barnhill v. Iowa Dist. Ct., 765 N.W.2d 267, 276 (Iowa 2009). Under the American Rule, the losing litigant does not normally pay the victor’s attorney’s fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147 (1975). “Therefore, any sanction or shifting of fees and costs which is made, need not reflect actual expenditures.” United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 171 (2d Cir.1996).
*590 We have dealt with the amount of a sanction under rule 1.413(1) on several occasions. In one case, we found the failure to impose a sanction to be an abuse of discretion. See Breitbach v. Christenson, 541 N.W.2d 840, 845-46 (Iowa 1995). In another, our most recent case involving the award of sanctions, we found the district court abused its discretion because the sanction included fees expended prior to the sanctionable conduct. See Everly, 774 N.W.2d at 495. There, we required the district court to determine the appropriate amount of a sanction after making specific findings as to “ ‘(1) the reasonableness of the opposing party’s attorney’s fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the ... violation.’ ” Barnhill, 765 N.W.2d at 277 (quoting In re Kunstler, 914 F.2d 505, 523 (4th Cir.1990)); accord Everly, 774 N.W.2d at 495. In addition to these four factors, we have encouraged district courts to consider factors set forth by the American Bar Association.[2] See Barnhill, 765 N.W.2d at 277.
In making its ruling, the district court attempted to make the specific findings of fact as required by Everly.
The court noted that the parties presented it with itemizations of attorney fees incurred by the parties seeking sanctions, that the parties did not present it with any indication of the parties’ insurance coverage for their legal fees, and that it “was left with the impression that each party who sought sanctions personally paid their legal fees.”[3] The court, however, failed to make a specific finding as to the reasonableness of the fees.
Further, the court made a finding as to the minimum amount to deter. It found that
the mere imposition of sanctions has in and of itself an impact of significance deterrence upon the person upon which *591 the sanctions are imposed.... [T]he court is satisfied that a court-ordered sanction of $1,000 along with the stigma attached to the mere imposition of sanctions is [a] sufficient sanction [to deter future conduct].
As to the ability to pay, the court stated it could not make a finding as to the ability of Laubenthal to pay a sanction because the court did not have any evidence as to Laubenthal’s financial situation. We agree with the district court that the record is devoid of any evidence that would allow the court to make a finding as to Lauben-thal’s ability to pay.
Finally, the court made specific findings as to the severity of the violation. In this regard, the court found Laubenthal did not take his actions in bad faith. The court also found his actions were not vindictive or willful insofar as to suggest he acted with evil intent. The court further found Laubenthal did not have a prior history of court-imposed sanctions.
We realize the district court erred by not making a specific finding as to the reasonableness of the opposing parties’ attorneys’ fees. Additionally, the record did not contain any evidence as to Lauben-thal’s ability to pay. It was Laubenthal’s obligation to set forth evidence of his ability to pay. Kunstler, 914 F.2d at 524. By not producing evidence of his ability to pay, Laubenthal took the risk that he would not have the ability to pay. However, even with these deficiencies, the district court did not abuse its discretion in fixing the amount of the sanction. Deterrence is the primary goal of sanctions, not compensation of the opposing party. The district court went to great length to make a detailed finding that a $1000 sanction is sufficient to deter any future conduct regardless of the opposing parties’ attorneys’ fees. Therefore, under the record made, we find the district court did not abuse its discretion in awarding a $1000 sanction. Consequently, we affirm the district court’s award of $1000 as the proper sanction.
V. Who Should Receive the Sanction Payment?
The district court directed Lau-benthal to pay the sanction to the Crawford County Jury and Witness Fund rather than to the parties seeking sanctions. It is true that rule 1.413(1) does not require that sanctions be paid to the opposing parties. The rule merely provides that
the court ... shall impose ... an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.
Iowa R. Civ. P. 1.413(1). Accordingly, while the rule states the court “shall impose” an appropriate sanction for any violation of the rule, the proceeds of that sanction may be allocated at the court’s discretion. Id.
However, rule 1.413(1) does not specifically name any particular authorized recipient other than the offended party. This is different from Federal Rule of Civil Procedure 11, which, after it was amended in 1993, directs payment of a penalty “into court” as the first potential destination for sanction proceeds. Fed. R.Civ.P. 11(c)(4). Rule 11 also allows, “payment to the movant of part or all of the reasonable attorney’s fees and other expenses directly resulting from the violation” but only if specifically requested in a motion and warranted by the situation.[4] *592 Id. Our rule 1.413(1) makes victim compensation a more prominent concern than Rule 11 because it allows offended parties to be partially or completely reimbursed either “upon motion or upon [the court’s] own initiative.” Id.
There are strong reasons for first directing sanctions to the injured parties. First, as we have noted, the reasonable expectation that parties will be the beneficiaries of sanctions should they prevail provides some of the incentive needed to motivate those parties to invest the time and money necessary to pursue legitimate sanction claims. If injured parties do not expect even to recoup the cost of their additional sanction filings, some may not be willing or financially able to file motions for sanctions. This would not only compound the personal injustice that they have already suffered, but it could undermine the integrity of our judicial system by diminishing the deterrent effect of sanctions. Accordingly, because the primary goal of rule 1.413(1) is deterrence, the primary goal is best achieved in most circumstances if sanctions are first allocated to the victims who made the investment to pursue them.[5]
Second, under Iowa law, although deterrence is clearly the primary goal of rule 1.413(1), the rule serves other purposes, such as maintaining professionalism in the practice of law. Barnhill, 765 N.W.2d at 273. Perhaps the most important secondary purpose is partial compensation of the victims. See id. at 276. Of course, victim compensation must clearly defer to deterrence when it comes to setting the amount of a sanction. See id. (“ ‘A sanction ... must be limited to what suffices to deter repetition of such conduct.’” (quoting Fed.R.Civ.P. 11(c)(4))). Nonetheless, courts should accommodate the secondary purpose of compensation when considering the allocation of the proceeds of a sanction.
We do not now define the precise standards for choosing between parties and the judicial system, but given the strong arguments in favor of victim compensation, we would expect courts to provide special reasons with specific findings as to why they exercised their discretion not to benefit those who have been most directly harmed by the sanctionable conduct. One valid reason for allocating sanctions to the judicial system would be the fact that the minimum sanction necessary for deterrence actually exceeded the costs to the *593 harmed litigants. In such a case, the excess should be paid to the judicial system so that parties do not receive a windfall and so that the system can be partially reimbursed for the unnecessary costs it incurred.
Therefore, we find the district court’s order requiring Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund without a specific finding as to why it should be paid to the jury and witness fund unreasonable in light of the preference in rule 1.413(1) to award the sanction to the party seeking it. Consequently, the court abused its discretion when it ordered Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund.
VI. Disposition.
Although we find, under the record made, the district court did not abuse its discretion in fixing the amount of the sanction at $1000, the court abused its discretion by ordering Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund. Given rule 1.413(l)’s preference of compensating victims, we hold the district court should enter an order requiring Laubenthal to pay the sanction in equal sums to defendants Anderson, Ro-sener, and the Helkenns as partial reimbursement of the legal fees they incurred in defending against the unfounded claims brought against them. We assess the costs of this appeal against Laubenthal.
COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND CASE REMANDED WITH INSTRUCTIONS.
All justices concur except WATERMAN, J., who concurs in part and dissents in part, and MANSFIELD, J., who takes no part.

. The district court sustained motions to dismiss by various defendants, noting the petition was too vague, but later allowed Rowedder to recast the allegations. A recast petition alleged all of the defendants had participated in the conspiracy.

. These factors include (1) the good or bad faith of the offending party; (2) the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense; (3) the offending party's knowledge, experience, and expertise; (4) the offending party’s prior history of sanctionable conduct; (5) the reasonableness and necessity of the out-of-pocket expenses the offended party incurred as a result of the misconduct; (6) the nature and extent of prejudice suffered by the offended party as a result of the misconduct, not including out-of-pocket expenses; (7) the relative culpability of the client and his or her counsel, and the impact an inquiry into their relative culpability would have on their privileged relationship; (8) the risk of chilling the specific type of litigation involved; (9) the impact the sanction would have on the offending party, including the offending party’s ability to pay a monetary sanction; (10) the impact the sanction would have on the offended party, included the offended party’s need for compensation; (11) the relative magnitude of the sanction necessary to achieve the sanction’s goals; (12) any burdens on the court system attributable to the misconduct, including the consumption of judicial time, incurrence of juror fees, and other court costs; (13) the degree to which the offended party attempted to mitigate any prejudice he or she suffered; (14) the degree to which the offended party’s behavior caused the expenses for which recovery is sought; (15) the extent to which the offending party persisted in advancing a position while on notice that the position was not well grounded in fact, warranted by existing law, or warranted by a good faith argument for the extension, modification, or reversal of existing law; and (16) the time of, and the circumstances surrounding, any voluntary withdrawal of a pleading, motion, or other paper. Barnhill v. Iowa Dist. Ct., 765 N.W.2d 267, 276-77 (Iowa 2009); ABA Section of Litigation, Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure (1988), reprinted in 121 F.R.D. 101, 125-26 (1988).

. The fact that an opposing party's attorney fees are paid by an insurance coverage will not defeat a party’s claim for sanctions. Pelletier v. Zweifel, 987 F.2d 716, 718 (11th Cir. 1993).

. The 1993 amendments to Rule 11 consciously elevated the primacy of deterrence *592 and significantly demoted concerns about victim compensation, thereby giving preference to the courts as the recipient of sanction proceeds: "Since the putpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty.” Fed.R.Civ.P. 11 advisory committee's notes to 1993 amendments.
However, federal courts have held compensation of wronged parties remains a valid subordinate purpose that supports the primary goal of deterrence. For example, the Sixth Circuit stated, "[I]t is ... clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation.” Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 400 (6th Cir.2009). Therefore, even if victim compensation is not considered a stand-alone purpose equivalent to deterrence, it will sometimes be necessary if deterrence is to be fully achieved. "If compensation was not a recognizable basis for Rule 11 awards, aggrieved litigants would have little incentive to pursue sanctions thus diminishing the important deterrent effect of Rule 11.” Brandt v. Schal Assocs., Inc., 960 F.2d 640, 646 (7th Cir. 1992).

. The Federal Rules also recognize that sometimes "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation.” Fed.R.Civ.P. 11 advisory committee’s notes to 1993 amendments.