# In the Iowa Supreme Court

---

No. 24–0548

---

Submitted October 7, 2025—Filed November 21, 2025

---

**The Law Office of Shawn Shearer, P.C., Shawn Shearer,**
and **Theodore F. Sporer,**

Plaintiffs,

vs.

**Iowa District Court for Fremont County,**

Defendant.

---

Appeal from the Iowa District Court for Fremont County, Greg W. Steensland (merits) and Eric J. Nelson (sanctions), judges.

Two attorneys petition for a writ of certiorari challenging a $30,000 sanctions award under rule 1.413(1) for their representation of clients challenging a wind turbine construction project. **Writ Sustained.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Shawn Shearer (argued) of The Shearer Law Office, P.C., Des Moines, and Theodore F. Sporer, Clive, pro se, for plaintiffs.

Robert M. Livingston and Kristopher K. Madsen of Stuart Tinley Law Firm, LLP, Council Bluffs, for defendant.

Brant M. Leonard (argued), Bret A. Dublinske, and Kristy Dahl Rogers (until withdrawal) of Fredrikson & Byron, P.A., Des Moines, for intervenor Shenandoah Hills Wind Project, LLC.

**Oxley, Justice.**

Two attorneys were sanctioned $30,000 arising out of their representation of Fremont County residents who filed suit to challenge a wind turbine construction project in the county. The district court found that the attorneys were subject to sanctions under Iowa Rule of Civil Procedure 1.413(1) because their legal positions were not well-grounded in existing law or a good faith argument to extend, modify, or reverse existing law. For the reasons set forth below, we conclude that the district court abused its discretion by imposing sanctions. We therefore sustain the attorneys' writ of certiorari.

## I. Factual Background and Proceedings.

Shenandoah Hills Wind Project, LLC (SHW) is an affiliate of Invenergy LLC, a large international developer of renewable energy with several wind farms across Iowa. In 2020, it began work to develop a wind energy conversion system (WECS) project to be constructed across Page and Fremont Counties in southwest Iowa. The project proposed building thirty-plus wind turbine sites in each county. SHW worked with each county's board of supervisors to approve the projects. The Page County Board of Supervisors (Page County BOS) passed an ordinance regulating the WECS projects on October 29, 2019. The Fremont County Board of Supervisors (Fremont County BOS) passed a similar wind ordinance—Fremont County Ordinance #2020-1, entitled "An Ordinance Regulating the Construction, Installation, and Maintenance of Wind Energy Conversion Systems and Addressing the Standards and Conditions Thereof Within Fremont County, Iowa" (Fremont County wind ordinance)—on June 24, 2020.

SHW submitted a permit application on March 23, 2022, to site and construct a WECS to both county boards of supervisors, as required by each

county's respective wind ordinance. Each county board held meetings to discuss the respective permit applications throughout the summer, where residents voiced their concerns about and objections to the wind turbine projects. Despite the objections, the Fremont County BOS approved SHW's permit application for the project in Fremont County on July 13, and the Page County BOS approved SHW's permit application for the project in Page County on August 2.

The wind ordinances also required the developer to enter into a road-use agreement and a decommissioning agreement with the county before it could begin construction of an approved WECS project. A road-use agreement is a separate agreement defining the rights and obligations of the county and the developer related to the construction, maintenance, and use of county roads in connection with the development of the WECS. A decommissioning agreement identifies the anticipated means and the estimated costs to remove each wind energy device within a specified time of its discontinued use. The county board must also authorize the zoning administrator to provide the necessary building permits required for each wind turbine before construction can begin. The Fremont County BOS approved a road-use agreement and a decommissioning agreement with SHW on December 28. The Page County project, by contrast, never got to the point of entering into those agreements with SHW.

Plaintiffs Shawn Shearer and Theodore Sporer (collectively, "plaintiff attorneys") are Iowa attorneys who represented residents of Page County and Fremont County opposing construction of the proposed wind farms in their respective counties. Plaintiff attorneys filed a petition in the Iowa District Court for Page County on behalf of James Hunter and other Page County residents (collectively referred to as "the Hunters") on September 19, 2022, against Page County, its board of supervisors, the individual supervisors, the

county attorney, and the county's zoning administrator seeking to halt the SHW project. The Page County defendants removed the case to the United States District Court for the Southern District of Iowa based on the Hunters' federal due process claim. Then they filed a pre-answer motion to dismiss. SHW moved to intervene and also filed a motion to dismiss. In a published order entered on January 31, 2023, the federal district court dismissed all claims, including the state law claims. *See Hunter v. Page County*, 653 F. Supp. 3d 600, 621 (S.D. Iowa 2023) (Pratt, J.), *aff'd in part, vacated in part*, 102 F.4th 853 (8th Cir. 2024).[1]

The federal court concluded that Page County's approval of the permit was a quasi-judicial function, so those challenges needed to be brought through a writ of certiorari as the exclusive remedy. *Id.* at 616–17. The court then concluded the Hunters filed their petition ten days too late, requiring those counts to be dismissed. *Id.* at 617, 619–20. For the challenges to the wind ordinance, the court concluded dismissal was appropriate regardless of whether the board was acting in a legislative or a quasi-judicial capacity because the board properly exercised its home rule authority to enact the wind ordinance. *Id.* at 617–18. In reaching that conclusion, the court distinguished the Page County wind ordinance from the one in *Mathis v. Palo Alto County Board of Supervisors*, 927 N.W.2d 191 (Iowa 2019), which the court characterized as a zoning

---

[1]The Eighth Circuit Court of Appeals vacated much of the district court's decision because Page County residents elected different members to the Page County BOS while the case was on appeal, and SHW's permit was revoked by the new board shortly after the district court entered its order. The majority held that the challenges to the ordinance and the permit approval were therefore moot. *See Hunter*, 102 F.4th at 863. The appellate court affirmed dismissal of the state law Open Meetings Act claims under the heightened federal pleading standard, recognizing that those claims might have survived our more liberal notice pleading standards. *Id.* at 874–75. Judge Colloton concurred in part. In his view, it was unnecessary to consider whether the claims were moot because they were not even yet "ripe for adjudication," given the additional regulatory approval needed to start construction on the project. *Id.* at 875–76 (Colloton, J., concurring in part and concurring in the judgment) ("The project may never come to fruition, and any assessment of the plaintiffs' challenges relating to the Wind Ordinance and issuance of a permit should wait until a more concrete controversy arises.").

ordinance. *Id.* at 618 ("[U]nlike the ordinance in *Mathis*, the Wind Ordinance is not a zoning ordinance or an amendment to a zoning ordinance."). The court also dismissed the remaining Open Meetings Act claims for failing to meet the heightened plausibility standard applied to federal pleadings. *Id.*

Meanwhile, plaintiff attorneys filed the action giving rise to this certiorari proceeding in the Iowa District Court for Fremont County on January 25—six days before the federal district court's order was entered in *Hunter*—on behalf of Danny Jennings and other Fremont County residents (collectively referred to as "the Jennings") against Fremont County, the Fremont County BOS, and the individual supervisors (collectively, "Fremont County defendants"). The petition asserted twenty-three claims that generally challenged: (1) the substance of and the process used to enact the Fremont County wind ordinance; (2) approval of SHW's application for a permit for the WECS project in Fremont County; (3) compliance with the procedures required by the Open Meetings Act under Iowa Code chapter 21 related to approving SHW's permit application; and (4) approval of the road-use and decommissioning agreements. The petition asserted several different bases for the challenges, but a primary point of contention asserted that the wind ordinance was inconsistent with the two-and-a-half-story height restriction contained in a Fremont County zoning ordinance. The petition also asserted that the wind ordinance's generalized repealer provision was insufficient to satisfy statutory requirements for making an exception to that zoning ordinance. *See* Iowa Code § 331.302(4) (2022) ("An amendment to an ordinance . . . shall specifically repeal the ordinance . . . or the . . . subpart to be amended, and shall set forth the ordinance . . . or subpart as amended.").

SHW quickly sought to intervene, as it had in the Page County litigation. Its counsel sent the plaintiff attorneys a letter on February 6 "pursuant to Iowa Rule of Civil Procedure 1.413(1)" requesting that they voluntarily dismiss the matter and threatening to seek sanctions if they did not. The letter—similar to one that SHW's counsel sent just after the plaintiff attorneys filed the Page County lawsuit—asserted that the Fremont County petition "violates your obligations under Rule 1.413(1), and so will every single document you file in furtherance of it subsequent to your receipt of this letter." The letter included a copy of the recently entered federal district court order in *Hunter* dismissing the lawsuit against Page County.

The plaintiff attorneys did not voluntarily dismiss the Fremont County case. But they did file an amended petition on behalf of the Jennings, which removed two of the original claims and made other revisions to the petition in response to *Hunter*. The Jennings also sought a temporary restraining order to halt action on an item on the Fremont County BOS's upcoming meeting agenda seeking approval of a right-of-way permit for SHW to begin removing trees and shrubs prefatory to construction of the WECS project. On March 28, the district court ordered the Fremont County BOS to take no action on the right-of-way permit until the court could hold a hearing on the Jennings' request for a restraining order. That request was ultimately heard on May 15, at the same time as SHW's subsequent motion to dismiss the lawsuit, joined by the Fremont County defendants.

On June 13, the district court dismissed the case and lifted the stay order. The district court dismissed the counts challenging the substance of the wind ordinance based on its conclusions that: (1) a county can use its home rule authority rather than its zoning authority to regulate wind farms through

stand-alone ordinances, so provisions in the Fremont County zoning ordinance containing height restrictions did not need to be amended or excepted pursuant to Iowa Code section 331.302(4); (2) the Fremont County zoning ordinance is not a "comprehensive plan," so Iowa Code section 335.5 did not require the stand-alone wind ordinance to comply with the zoning ordinance; and (3) the ordinance was not unconstitutionally vague as a matter of law. It dismissed the counts raising procedural challenges to enactment of the wind ordinance because it found the county substantially complied with the statutory process. It dismissed the counts challenging approval of the permit application for failure to state a claim. It dismissed the counts challenging approval of the road-use and decommissioning agreements because those agreements "speak for themselves" and were within the Fremont County BOS's authority. And it dismissed the counts alleging violations of the Open Meetings Act as failing to state a claim, noting that whether a gathering of board members constituted a "meeting" was a matter of law for the court to decide.

We transferred the Jennings' appeal to the court of appeals, which affirmed in part and reversed in part. The court of appeals concluded that "nearly all of the Board's actions at issue in this appeal were quasi-judicial," *Jennings v. Fremont County*, No. 23–1101, 2024 WL 5152369, at *4 (Iowa Ct. App. Dec. 18, 2024), such that certiorari review was the exclusive method for bringing the challenges even though the Jennings also sought declaratory and injunctive relief, *id.* Noting that the petition was filed 197 days after the permit application was approved and 946 days after the wind ordinance was passed, the court of appeals affirmed dismissal of all counts as untimely except the ones regarding the Open Meetings Act. *See id.* (citing Iowa R. Civ. P. 1.1402(3), which requires certiorari claims to be brought within thirty days of the purportedly illegal

action). So, unlike the district court, the court of appeals did not reach the merits of any of the claims. The court of appeals reversed dismissal of the Open Meetings Act counts because they satisfied our notice pleading standards. *Id.* at 5. Judge Langholz joined the majority opinion in full but filed a special concurrence to clarify his separate view on the ordinance's general repealer clause. He emphasized that "no one should read the court's opinion as blessing the ordinance's general repealer clause." *Id.* at 6 (Langholz, J., concurring specially). He further explained that "[i]n a case where it were necessary to do so, [he] would not hesitate to hold the clause violates section 331.302(4) because it fails to specify any particular provision that is repealed." *Id.*

In the meantime, back in district court, SHW filed a motion for sanctions on July 13, 2023, against the Jennings' counsel—the attorney plaintiffs in this certiorari proceeding. The district court judge who entered the order dismissing the case on the merits had reached mandatory retirement age, so the sanctions motion was considered by a different judge who was newly appointed to the case. The district court granted the motion for sanctions on November 7. The parties then briefed the appropriate amount of sanctions, and the district court entered an order on March 7, 2024, requiring the Jennings' counsel to pay a monetary sanction of $30,000, with $20,000 paid to SHW and $10,000 paid to the Fremont County defendants.

The plaintiff attorneys filed a timely petition for writ of certiorari to our court on April 2. We granted the writ on July 12 and retained the appeal.

**II. Analysis.**

**A. Standard of Review.** A writ of certiorari is the proper vehicle for challenging a district court's order imposing sanctions on an attorney. *See Davis v. Iowa Dist. Ct. for Scott Cnty.*, 943 N.W.2d 58, 61 (Iowa 2020); *Hearity v. Iowa*

*Dist. Ct. for Fayette Cnty.*, 440 N.W.2d 860, 862 (Iowa 1989). We review a district court's decision to award sanctions for abuse of discretion. *Dupaco Cmty. Credit Union v. Iowa Dist. Ct. for Linn Cnty.*, 13 N.W.3d 580, 589 (Iowa 2024). Under that standard, the district court's factfindings are binding on us "if they are supported by substantial evidence." *Id.* A district court abuses its discretion when it "exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (quoting *Schettler v. Iowa Dist. Ct. for Carroll Cnty.*, 509 N.W.2d 459, 464 (Iowa 1993)). "An erroneous application of the law is clearly untenable." *Id.* (quoting *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012)). Thus, under the abuse of discretion standard, "we will correct an erroneous application of the law." *Id.* (quoting *Barnhill v. Iowa Dist. Ct. for Polk Cnty.*, 765 N.W.2d 267, 272 (Iowa 2009)).

**B. Framework for a Rule 1.413(1) Sanction.** SHW sought, and the district court awarded, sanctions under Iowa Rule of Civil Procedure 1.413(1). That rule defines the representations that are necessarily included in an attorney's signature on a pleading or other filing with the court.[2] The rule "affirm[s] that a person's signature on a motion, pleading, or other paper filed with the court is a 'certificate' that the person has read the item, that it is grounded in fact and law to the best of the person's knowledge after a reasonable inquiry, and that it is not interposed for an improper purpose." *Dupaco Cmty.*

---

[2]Rule 1.413(1) provides:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.

Iowa R. Civ. P. 1.413(1); *see also* Iowa Code § 619.19(2) (setting same expectations for signature by counsel or a party).

*Credit Union*, 13 N.W.3d at 584. We refer to these as the "reading, inquiry, and purpose elements" of the signature requirement. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991). A breach of any of these independent duties requires the court to impose a sanction. *Barnhill*, 765 N.W.2d at 272; *see also Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989) (en banc) ("The question . . . is not whether a court shall impose sanctions when it finds a violation—it must; . . . .").

Here, SHW sought sanctions under the inquiry element by asserting that there was no legal basis to support the pleadings filed on behalf of the Jennings, particularly after the federal district court dismissed the *Hunter* case on January 31, 2023. Whether counsel failed to make a reasonable inquiry into the law requires a court to consider "the complexity of factual and legal issues, the clarity or ambiguity of existing law, and the plausibility of the legal positions asserted." *Dupaco Cmty. Credit Union*, 13 N.W.3d at 589–90 (quoting *Est. of Bisignano*, 991 N.W.2d 135, 142 (Iowa 2023)). An attorney's conduct is assessed against "an objective, not subjective, standard of reasonableness under the circumstances." *Id.* at 590 (quoting *Est. of Bisignano*, 991 N.W.2d at 142). "Arguments 'made in good faith' weigh against a sanction." *Est. of Bisignano*, 991 N.W.2d at 142 (quoting *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 710 (Iowa 2020)).

The district court agreed with SHW that sanctions were warranted, relying heavily on the federal court's *Hunter* opinion. In addressing the legal complexity of the case, the district court recognized that "the contours of [the constitutional county home rule's] meaning and interplay with other laws is relatively untested" but that, "as the *Hunter* court noted, 'the problems raised here are not issues of first impression in the State.'" (quoting *Hunter*, 653 F. Supp. 3d at 615). In considering whether there was any ambiguity in the law, again, the district

court recognized that "there is some ambiguity in the area of county home rule law," but it noted that many of the claims involved other areas of general municipal law and that "the existing law was further clarified by the *Hunter* court." And with respect to plausibility, the district court concluded that "[w]hile there are some claims that are plausible, the majority of claims have minimal plausibility due to weak factual or legal bases, or because the issues were already decided in *Hunter*."[3]

The district court considered the eleven American Bar Association (ABA) guidelines we discussed in *Mathias v. Glandon. See* 448 N.W.2d at 446–47 ("In determining whether a reasonable inquiry into the law has been made, the court considers all relevant circumstances," including a list from the ABA). Although the ABA guidelines provide circumstances that could help determine whether counsel made a proper inquiry into the law, we caution that these are merely a list of circumstances. They are not "factors" or elements of a test to be considered or weighed as a balancing test in every case. Nevertheless, after considering each circumstance listed in the ABA guidelines, the district court "found that counsel for Petitioners have violated Rule 1.413 by initiating and maintaining this case despite it not being warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

1. *Rule 1.413(1) imposes no continuing duty.* We start by reiterating that rule 1.413(1) focuses on an attorney's conduct at the time a specific filing is

---

[3]The district court rejected two counts as implausible in part because they cited Iowa Code section 351.1, which—as pointed out by SHW in its motion to dismiss—was repealed in 1994 and related to licensing requirements for dogs. Those counts also cited Iowa Code section 352.5, governing county land use plans. Despite SHW's purported inability "to discern what statute Petitioners might have meant to cite," it seems most likely that the cite to section 351.1 was a typographical error intended to cite to section 352.1—the "purpose" provision identifying the general assembly's "intent to provide for the orderly use and development of land" in Iowa. Thi s apparent typo does not support sanctions.

signed. "[T]here [i]s no continuing duty under [the] sanction rule." *Mathias*, 448 N.W.2d at 447; *see also Schettler*, 509 N.W.2d at 465 ("*Mathias* specifically rejected any notion that Rule [1.413(1)] imposes a continuing duty on the signer to dismiss the action if the signer later learns the client has no case."). In *Mathias*, plaintiff's counsel learned—after filing the original petition—that there was no factual basis for seeking to toll the statute of limitations based on the minor plaintiff's mental injuries. *Mathias*, 448 N.W.2d at 447. Even so, the district court properly rejected the defendant's argument that plaintiff's "counsel had a duty to dismiss the lawsuit when he learned his client had no case." *Id.* Later-acquired information is not generally relevant to the rule 1.413(1) sanctions inquiry because the plain language of the rule "clearly expresses an intent that the court evaluate the signer's conduct at the time of signing the pleading, motion, or other paper." *Id.*

The same is true here. Whatever insight the federal district court's *Hunter* opinion might have provided for the Jennings' claims, rule 1.413(1) did not require the plaintiff attorneys to dismiss the previously filed *Jennings* petition on threat of sanctions. The Iowa district court erred as a matter of law when it concluded that the plaintiff attorneys engaged in sanctionable conduct "by initiating and maintaining this case" based on the postfiling *Hunter* decision in federal court.

2. *Each filed paper must be considered separately.* We also stress that rule 1.413(1) requires a court to consider counsel's actions with respect to each specific filing signed by counsel. Here, after the district court concluded that the plaintiff attorneys engaged in sanctionable conduct, it had the parties focus on events after the *Hunter* dismissal to brief and argue the amount of an appropriate sanction. In its subsequent order determining the amount of the sanction, the

district court identified ten pleadings it deemed sanctionable, including the amended petition, three motions related to the temporary restraining order to prevent Fremont County from approving a right-of-way permit for SHW to begin cutting down trees, a motion for partial judgment on the pleadings with respect to one count, and resistances or replies to motions filed by SHW or the Fremont County defendants.

The district court's analysis focused on the amended petition but failed to address legal deficiencies in any of the other nine identified filings. The three filings related to the temporary restraining order were filed specifically to halt impending action by the Fremont County BOS that would have allowed SHW to begin preliminary physical work in preparation for constructing the wind farm. Other than challenging the continuing underlying legal basis for the lawsuit, SHW never argued—and the district court did not find—that the Jennings had no legal basis for seeking a temporary halt to the construction work during the pendency of the lawsuit.

Similarly, no challenge was made to the specific legal assertions made in the resistances to motions filed by SHW and the Fremont County defendants. If—as we've said—rule 1.413(1) does not require an attorney to dismiss a lawsuit based on subsequently learned information, then it is not necessarily violated each time the attorney files additional papers in district court. That determination—whether subsequent filings violated rule 1.413(1)—depends on the legal positions taken in each of the subsequent filings. The district court abused its discretion in concluding that ten different filings violated rule 1.413(1) without considering the specific allegations made and the legal premises relied upon in each filing.

3. *The amended petition was not sanctionable.* Even considering the plaintiff attorneys' conduct in signing the amended petition, we conclude that the district court abused its discretion in finding that the legal bases for the petition were so lacking as to be sanctionable. Courts should be especially cautious when a party seeks sanctions on the basis that a pleading is legally frivolous. "Close scrutiny of an attorney's duty under [rule 1.413(1)] can have the effect of stifling legal creativity, repressing vigorous advocacy, multiplying expansive satellite litigation over sanctions, and creating a danger of arbitrary and inconsistent enforcement." Mark S. Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 495 (1987). The rule requires only that a legal position be "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Iowa R. Civ. P. 1.413(1). Even when a position is directly precluded by binding precedent, attorneys must be allowed to make good faith arguments for changes in the law.

As such, a court should not take too broad a view in assessing whether a filing is sufficiently supported by the law. *See* Cady, 36 Drake L. Rev. at 495 ("The duty to support the legal merit behind each document presents a potential for danger if defined in broad terms."). A conclusory analysis, such as the conclusion that plaintiff attorneys made arguments contrary to "topics in general municipal law that are settled," is inadequate to support sanctions without identifying the positions that are legally deficient. Rather, district courts should consider the specific legal bases presented to support a pleading to determine whether the attorney had a good faith basis for taking a particular position. A claim that identifies an issue of first impression or seeks to clarify existing law is not frivolous even though it turns out to lack legal merit. *See, e.g., Est. of Bisignano*, 991 N.W.2d at 142 ("In *In re Guardianship of Radda*[, 955 N.W.2d 203

(Iowa 2021)], for instance, we determined that even though a party presented questions of first impression that lacked merit, the arguments weren't frivolous within the meaning of rule 1.413(1)."").

Here, despite finding that the meaning and interplay between the constitutional county home rule and other laws was "relatively untested" and that "there is some ambiguity in the area of county home rule law," the district court concluded that the plaintiff attorneys' legal positions were sanctionable. The court relied almost exclusively on the federal district court's decision dismissing the *Hunter* litigation and our prior case of *Mathis v. Palo Alto County Board of Supervisors*, 929 N.W.2d 191 (Iowa 2019), to conclude that the plaintiff attorneys failed to make an adequate inquiry into the relevant law. Even setting aside the timing issue between the original petition and the subsequent *Hunter* ruling in federal court, the district court's reliance on *Hunter* to sanction the amended petition was an abuse of discretion.

First, there were material factual differences between the two cases. The Jennings' claims included challenges to the road-use and decommissioning agreements between Fremont County and SHW, but the Page County project was not as far along and had not yet entered those agreements. So the *Hunter* litigation did not touch on those claims. Further, the specific procedural challenges to enacting the respective county wind ordinances, including any purported conflicts of interest by individual supervisors or overreaching by Invenergy into the approval process, involved different county boards with different members and raised disparate procedural defects. So *Hunter* likewise did not touch on those distinct challenges brought by the Jennings' plaintiffs. How these factual differences might play out even under the *Hunter* analysis was not so clear as to make filing the amended petition sanctionable. *See Retterath,*

938 N.W.2d at 710 (holding that sanctions were not appropriate even though an intervening case that undermined the plaintiff's position—and in which the same counsel was involved—was decided prior to the ruling in the current case where an "argument that the indemnity provision under these facts was an attorney fee provision had some basis in fact").

More importantly, *Hunter* is a decision by a federal district court, which "is bound to follow—not lead—state-court jurisprudence." *Zick v. Verson Allsteel Press Co.*, 623 F. Supp. 927, 932 (N.D. Ill. 1985) ("[T]hough in an Illinois state court Zick might perhaps have had a 'good faith argument for the extension, modification, or reversal of existing law,' any argument of that type was also doomed to failure in this Court" given "the firmly-entrenched canon . . . that [a] federal court is bound to follow—not lead—state-court jurisprudence." (emphasis omitted)). Indeed, when it comes to deciding state law issues, federal courts are "inferior in authority" to state courts. *State v. White*, 9 N.W.3d 1, 10 (Iowa 2024). Thus, even if the order in *Hunter* might be persuasive about Iowa law, it was not binding on the Iowa district court in *Jennings*. Nor did it render the plaintiff attorneys' continued pursuit of claims in *Jennings* through the amended petition an unreasonable inquiry into the law, where they could freely argue that *Hunter* was wrongly decided.

Nor does our *Mathis* decision support sanctions. *Mathis* involved a challenge to a wind ordinance passed by the Palo Alto County Board of Supervisors and approval of a wind farm project to be developed by Palo Alto Wind Energy, L.L.C. (another subsidiary of Invenergy) and eventually owned and operated by MidAmerican Energy. *See* 927 N.W.2d at 193. But the issues differed from the ones asserted here. For example, the *Mathis* plaintiffs did "not contend that the ordinance was procedurally or substantively improper," *id.* at 196, but

the Jennings did. We rejected the Mathis' challenge to Invenergy and MidAmerican Energy's involvement in the Palo Alto ordinance because the county had not "merely rubberstamped" a proposal from the private parties where it "accepted some but not all" of their requests. *Id.* Whether the Fremont County BOS rubber-stamped SHW's input into the ordinance depends on a different set of facts.

The Mathis' challenges to approval of the permit were also factually different than the ones raised by the Jennings to SHW's permit. *See id.* at 197–99 (discussing challenges about whether the developer also had to be the ultimate owner and claims that the county failed to consider recommendations by the department of natural resources and state archeologist concerning wildlife and endangered species as well as an acoustical expert's report about noise levels). The district court failed to address these factual differences when it broadly concluded that the plaintiff attorneys' amended pleadings were inconsistent with *Mathis.*

Further, *Mathis* highlights the "untested" interplay noted by the district court between a county's home rule authority and its zoning authority in the context of wind ordinances. One of the fighting issues raised in *Jennings* was whether the newly enacted Fremont County wind ordinance conflicted with the two-and-a-half-story height restriction included in the Fremont County zoning ordinance such that the wind ordinance needed to amend or except that zoning ordinance under Iowa Code section 331.302(4). In *Hunter,* the federal district court distinguished the Page County wind ordinance from the Palo Alto wind ordinance in *Mathis* because that one was a "zoning ordinance or an amendment to a zoning ordinance." *Hunter,* 653 F. Supp. 3d at 618; *see also Mathis,* 927 N.W.2d at 194, 196 (explaining that the county attorney "draft[ed] a new

zoning ordinance" modeled after wind ordinances from other counties and applying the "general rule . . . that zoning determinations are a legislative function of a city council or board of supervisors" (second quoting *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 40 (Iowa 2016))). The *Hunter* court then concluded that the Page County wind ordinance was proper as a stand-alone ordinance pursuant to the county's home rule authority, not its zoning authority, so any discrepancies with the Page County zoning ordinance were immaterial. *See Hunter*, 653 F. Supp. 3d at 617.

Yet, in this case, SHW characterizes *Mathis* as dismissing "claims concerning a home-rule wind ordinance" with a citation to the Palo Alto County's website, even though we treated that ordinance as stemming from the county's zoning authority, not its home rule authority. "Home rule" is never mentioned in our *Mathis* opinion. And in the appeal of the merits of the Jennings' case, Judge Langholz of our court of appeals concurred specially on this very point to make clear that, in his view, the general repealer language included in the Fremont County wind ordinance "violates [Iowa Code] section 331.302(4) because it fails to specify *any* particular provision that is repealed." *Jennings*, 2024 WL 5152369, at *6 (Langholz, J., concurring specially). As the final arbiter of state law, we have not definitively settled the interplay between a county's home rule authority and its zoning authority with respect to wind ordinances. In short, the district court abused its discretion when it disregarded the unsettled law surrounding a county's authority with respect to enacting wind ordinances and sanctioned the plaintiff attorneys for pursuing this legal challenge.

Finally, we note that our court of appeals reversed dismissal of the Jennings' Open Meetings Act claims, so those claims were not frivolous. While

the court of appeals affirmed dismissal of the remaining claims as untimely under the thirty-day timeframe for bringing a writ of certiorari under rule 1.1402,[4] that was not a foregone conclusion when the amended petition was filed. Indeed, in *Mathis*, we decided the merits of the challenges to the wind ordinance in that case even though the action was filed over a year later. *See* 927 N.W.2d at 194–95 (noting that the ordinance was approved on September 27, 2016, and the plaintiffs' petition for declaratory and injunctive relief and a writ of certiorari was filed on November 22, 2017). And Judge Colloton did not believe the similar challenges were even ripe—let alone untimely—in *Hunter*. *See* 102 F.4th at 875–76.

Rule 1.413(1) "was not intended to chill an attorney's enthusiasm or creativity in pursuing legal or factual theories." Cady, 36 Drake L. Rev. at 495; *see also First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 751 (Iowa 2018) (agreeing with concerns raised by the United States Supreme Court in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), which "recogniz[ed] Rule 11's 'central goal of deterrence' but noting 'concerns that it will spawn satellite litigation and chill vigorous advocacy' "). Wind farms are relatively new in Iowa, and the interplay between a county board's zoning authority and its home rule authority is not so clear and well-established as to cut off all attempts to ensure boards are properly enacting wind ordinances and approving permits. "The primary purpose of sanctions under rule 1.413(1) is to deter frivolous litigation, not to compensate the winning side." *Est. of Bisignano*, 991 N.W.2d at 142. That the Jennings' claims were dismissed at the pleading stage did not mean they were legally frivolous.

---

[4]This seems to be factually erroneous with respect to the counts challenging the road-use and decommissioning agreements approved by the Fremont BOS on December 28, 2022, within thirty days of the Jennings' petition filed on January 25, 2023.

**III. Conclusion.**

The district court abused its discretion by awarding sanctions against the plaintiff attorneys. We sustain the plaintiff attorneys' writ of certiorari and vacate the district court's sanctions order.

**Writ Sustained.**